UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| W.N. MOTORS, INC. d/b/a COASTAL NISSAN, | * * * * | |
| Plaintiff, | * * | |
| v. | * * | Civil Action No. 21-cv-11266-ADB |
| NISSAN NORTH AMERICA, INC., | * * * | |
| Defendant. | * * | |

**MEMORANDUM AND ORDER ON**
**NISSAN NORTH AMERICA'S MOTION TO DISMISS**

BURROUGHS, D.J.

Plaintiff W.N. Motors, Inc. d/b/a Coastal Nissan ("Coastal") alleges that Defendant

Nissan North America, Inc. ("NNA") violated various provisions of the Massachusetts statute

governing car distributors and dealers.  [ECF No. 1-1 at 5–29].  Currently before the Court is

NNA's motion to dismiss a subset of Coastal's claims.  [ECF No. 11].  For the reasons set forth

below, NNA's motion is GRANTED.

I.      BACKGROUND

        A.      Statutory Scheme

Coastal brings its claims pursuant to Massachusetts General Laws Chapter 93B.  [ECF

No. 1-1 at 20–27].  "Chapter 93B regulates business practices between motor vehicle

manufacturers, distributors and dealers."  Petrosyan v. Maserati N. Am., Inc., No. 19-cv-12425,

2020 WL 2104789, at *3 (D. Mass. May 1, 2020).  The statute is "aimed primarily at protecting

motor vehicle dealers from injury caused by the unfair business practices of manufacturers and

distributors with which they are associated, generally in a franchise relationship."  Mass. State

Auto. Dealers Ass'n v. Tesla Motors MA, Inc., 15 N.E.3d 1152, 1153 (Mass. 2014).  Section 9

of the statute governs how manufacturers and distributors must compensate dealers for honoring

warranties.  See Mass. Gen. Laws ch. 93B, § 9.  If, pursuant to its franchise agreement, a dealer

"furnishes labor, parts and materials under [a] warranty" offered by the manufacturer or

distributor, the manufacturer or distributor must "adequately and fairly compensate" the dealer.

Id. § 9(b)(1).  Under the statute, "fair and adequate compensation shall not be less than the rate

and price customarily charged for retail customer repairs."  Id.  With respect to a customary rate

for parts, either the dealer and manufacturer/distributor can agree upon a fixed percentage

mark-up over the dealer's costs, or the dealer can follow a series of procedures set forth in the

statute to derive a statutory rate.[1]  Id. § 9(b)(2)(i).  With respect to a customary rate for labor, the

dealer must follow the statutory procedures to derive a rate.  Id. § 9(b)(2)(ii).

B.      Factual Background

Coastal is an authorized Nissan dealer in Norwell, Massachusetts.  [ECF No. 1-1 at 6].

NNA is a Nissan distributor with a network of franchised Nissan dealers throughout

Massachusetts (including Coastal).[2]  [Id.].  Pursuant to the Dealer Term Sales and Service

Agreement that Coastal executed with NNA, Coastal is contractually obligated to honor

warranties extended by NNA or the manufacturer (regardless of whether Coastal sold the vehicle

in question).  [Id. at 8].  Between approximately 2013 and April 1, 2021, NNA assessed a

---

[1] In broad strokes, the dealer must rely on previous work orders from non-warranty customers to demonstrate its typical rates.  See Mass. Gen. Laws ch. 93B, § 9(b)(2)(i).

[2] At this juncture, it is undisputed that Coastal and NNA are a "dealer" and "distributor," respectively, within the meaning of the statute.

"Warranty Supplemental Expense Charge" (the "Warranty Charge") on each new vehicle that it sold to Coastal.[3]  [Id. at 10].

On or about March 8, 2021, Coastal sent NNA a demand letter requesting that NNA stop assessing the Warranty Charge and seeking a refund for the Warranty Charges assessed over the past four years.  [ECF No. 1-1 at 11].  As of April 1, 2021, NNA stopped imposing the Warranty Charge, but it refused to refund Coastal any money.  [Id.].

### C.        Procedural Background

Coastal filed this suit in the Business Litigation Session of the Suffolk County Superior Court on July 2, 2021, see [ECF No. 1-1 at 29], alleging that (1) NNA's Warranty Charge violated Chapter 93B, § 9(b)(2)(vii) (Count I) and (2) NNA violated Chapter 93B, §§ 3(a), 4(a), and 4(c)(12) (Count II).[4]  [Id. at 20–27].  With respect to Count II, Coastal identifies a variety of alleged misconduct, including the assessment of the Warranty Charge.[5]  [Id. at 22–27].  On August 4, 2021, NNA removed the case to this Court.  [ECF No. 1].  A week later, NNA filed its partial motion to dismiss, arguing that Count I (and Count II insofar as it is based on the Warranty Charge) should be dismissed for failure to state a claim.  [ECF No. 11].  Coastal opposed on August 25, 2021, [ECF No. 13], and NNA filed a reply on September 8, 2021, [ECF No. 16].

---

[3] The Warranty Charge increased over time, starting at $65 per vehicle and eventually escalating to $260 per vehicle.  [ECF No. 1-1 at 10].

[4] Coastal also seeks injunctive relief (Count III).  [ECF No. 1-1 at 27–28].

[5] The Court does not discuss the other alleged misconduct because it is not implicated by NNA's motion.

## II.      LEGAL STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept as true all

well-pleaded facts, analyze those facts in the light most favorable to the plaintiff, and draw all

reasonable factual inferences in the plaintiff's favor.  See Gilbert v. City of Chicopee, 915 F.3d

74, 76, 80 (1st Cir. 2019).  "[D]etailed factual allegations" are not required, but the complaint

must set forth "more than labels and conclusions."  Bell Atl. Corp. v. Twombly, 550 U.S. 544,

555 (2007).  The alleged facts must be sufficient to "state a claim to relief that is plausible on its

face."  Id. at 570.

"To cross the plausibility threshold a claim does not need to be probable, but it must give

rise to more than a mere possibility of liability."  Grajales v. P.R. Ports Auth., 682 F.3d 40,

44–45 (1st Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "A determination of

plausibility is 'a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense.'"  Id. at 44 (quoting Iqbal, 556 U.S. at 679).  "[T]he complaint

should be read as a whole, not parsed piece by piece to determine whether each allegation, in

isolation, is plausible."  Hernandez-Cuevas v. Taylor, 723 F.3d 91, 103 (1st Cir. 2013) (quoting

Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 14 (1st Cir. 2011)).  "The plausibility standard

invites a two-step pavane."  A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir.

2013) (citing Grajales, 682 F.3d at 45).  First, the Court "must separate the complaint's factual

allegations (which must be accepted as true) from its conclusory legal allegations (which need

not be credited)."  Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir.

2012)).  Second, the Court "must determine whether the remaining factual content allows a

'reasonable inference that the defendant is liable for the misconduct alleged.'"  Id. (quoting

Morales-Cruz, 676 F.3d at 224).

## III.     DISCUSSION

NNA argues that Count I must be dismissed because Coastal has not plausibly alleged a

violation of Chapter 93B, § 9.  [ECF No. 11-1 at 5–9].  Specifically, NNA maintains that nothing

in § 9 prevents distributors from assessing a warranty surcharge like the one at issue here.  [Id.].

Coastal responds that the statute proscribes policies inconsistent with § 9 and that the Warranty

Charge is such a policy because it deprives Coastal of the full "fair and adequate compensation,"

Mass. Gen. Laws ch. 93B, § 9(b)(1), it is entitled to under the statute.  [ECF No. 13 at 4–18].

For the reasons that follow, Coastal has failed to plausibly allege a violation of § 9.  Accordingly,

NNA's motion to dismiss, [ECF No. 11], is GRANTED.

The parties agree that no Massachusetts state or federal court has addressed the question

presented here (i.e., whether a distributor may impose a warranty surcharge under § 9).  See

[ECF No. 11-1 at 7; ECF No. 13 at 1].  In such situations, the Court must predict how the

Massachusetts Supreme Judicial Court would resolve the issue.  Phillips v. Medtronic, Inc., 754

F. Supp. 2d 211, 216 (D. Mass. 2010) ("When a federal court is applying state substantive law in

a diversity action and the state courts have not addressed an issue, the federal court must predict

how the state's highest court would resolve the issue by 'relying on guidance from analogous

decisions in other states and other legal authorities.'" (quoting Stratford Sch. Dist., S.A.U. Dist.

No. 58 v. Emps. Reinsurance Corp., 162 F.3d 718, 720 (1st Cir. 1998))).

The Court begins with the text of the statute.  Phillips v. Equity Residential Mgmt.,

L.L.C., 85 N.E.3d 12, 17 (Mass. 2017) ("As the question turns on a matter of statutory

interpretation, we begin with the text of the statute." (citing Int'l Fid. Ins. Co. v. Wilson, 443

N.E.2d 1308, 1316 (Mass. 1983))).  Coastal's claim is premised on § 9(b)(2)(vii), which

provides:

> A manufacturer or distributor shall not require, influence or attempt to influence a
> motor vehicle dealer to implement or change the prices for which it sells parts or
> labor in retail customer repairs.  A manufacturer or distributor shall not implement
> or continue a policy, procedure or program to any of its dealers in the
> commonwealth for compensation which is inconsistent with this subsection.

Mass. Gen. Laws ch. 93B, § 9(b)(2)(vii).  Notably, the section is silent with regard to surcharges

like the Warranty Charge at issue here.  If the Massachusetts Legislature intended to forbid

distributors from assessing surcharges (or utilizing other cost recovery methods), it would have

done so explicitly, as other legislatures in nearby states have done.[6]  As a general matter, courts

should not read language into statutes.  See Simmons v. Clerk-Magistrate of Bos. Div. of Hous.

Ct. Dep't, 858 N.E.2d 727, 733 (Mass. 2006) ("We will not add words to a specific statute that

the Legislature did not put there . . . .").  Further, as NNA points out, a proposed amendment to

the statute that would expressly prohibit surcharges like the Warranty Charge was introduced this

year in the Massachusetts Senate.  See S.D. 1812, 2021 Leg., 192 Gen. Ct. (Mass. 2021)

(amending § 9(b) by adding the following sentence: "A manufacturer or distributor shall not,

---

[6] See, e.g., Conn. Gen. Stat. § 42-133s(g) ("A manufacturer or distributor may not otherwise
recover its costs from dealers within this state, including an increase in the wholesale price of a
vehicle or surcharge imposed on a dealer solely intended to recover the cost of reimbursing a
dealer for parts and labor pursuant to this section, provided a manufacturer or distributor shall
not be prohibited from increasing prices for vehicles or parts in the normal course of business.");
Me. Stat. tit. 10 § 1176 ("A franchisor may not otherwise recover its costs for reimbursing a
franchisee for parts and labor pursuant to this section."); N.H. Rev. Stat. Ann.
§ 357-C:5(II)(b)(1)(B)(vi) ("A manufacturer or distributor may not otherwise recover its costs
for reimbursing a franchisee for parts and labor pursuant to this section."); R.I. Gen. Laws
§ 31-5.1-6(g) ("A manufacturer or distributor may not otherwise recover its costs from dealers
within this state, including an increase in the wholesale price of a vehicle or surcharge imposed
on a dealer solely intended to recover the cost of reimbursing a dealer for parts and labor
pursuant to this section, provided a manufacturer or distributor shall not be prohibited from
increasing prices for vehicles or parts in the normal course of business.").

pursuant to a surcharge or other assessment stated on the vehicle invoice provided to the dealer or through such other charge or means, otherwise recover its costs for reimbursing a dealer for parts and labor pursuant to this section; provided, however, that a manufacturer or distributor shall not be prohibited from increasing prices for vehicles or parts in the normal course of business."). This suggests that, as currently drafted, § 9(b) does not prohibit surcharges. See Liberty Lincoln-Mercury, Inc. v. Ford Motor Co., 676 F.3d 318, 325 (3d Cir. 2012) ("Rather, the Maine Legislature's subsequent amendment to the statute indicates that legislatures are capable of speaking clearly to prohibit franchisors from recovering compliance costs when that is the legislature's intention.").

Even though § 9 does not specifically prohibit (or even reference) surcharges, Coastal argues that the Warranty Charge is a "policy, procedure or program . . . for compensation which is inconsistent with" § 9(b). See [ECF No. 13 at 4–17]. The Court disagrees. Section 9(b)(2)(vii) is designed to prevent two things. The first sentence precludes distributors from pressuring dealers into charging lower prices for parts and/or labor to non-warranty customers, and the second sentence prohibits distributors from reimbursing dealers for providing warranty service in a manner at odds with § 9(b)(2). Here, Coastal fails to allege that NNA has done either.[7] Instead, Coastal takes issue with the price that NNA charges for cars because that price includes a surcharge designed to offset NNA's costs in complying with § 9(b)(2). The price that NNA charges Coastal for cars, however, is not a "policy, procedure or program . . . for compensation which is inconsistent with" § 9(b) because § 9(b) does not address how much

---

[7] Coastal alleges that it and NNA did not reach an agreement regarding reimbursement rates for parts, [ECF No. 1-1 at 9], but does not allege that it complied with the framework for establishing its customary rate set forth in § 9(b)(2)(i)–(ii). More generally, Coastal's complaint lacks allegations concerning actual reimbursement requests or payments.

distributors (like NNA) can charge dealers (like Coastal) for vehicles.  Section 9(b) addresses how distributors (like NNA) must compensate dealers (like Coastal) for making warranty repairs. See Phillips, 85 N.E.3d at 257 ("Where the text of the statute is clear and unambiguous, we must apply its ordinary meaning.").  Because Coastal has made no allegations suggesting that NNA's warranty repair reimbursement policy runs afoul of the statute,[8] it has failed to state a claim under § 9(b)(2)(vii).  Cf. Acadia Motors, Inc. v. Ford Motor Co., 44 F.3d 1050, 1056 (1st Cir. 1995) (noting that where a Maine statute governing auto distributors and dealers was silent as to wholesale or retail prices, the manufacturer was free to increase wholesale prices); see also All. of Auto. Mfrs. v. Gwadosky, 430 F.3d 30, 32 (1st Cir. 2005) (discussing the fact that the Maine statute at issue in Acadia Motors had been amended to specifically proscribe "surcharges to wholesale motor vehicle prices in order to recoup the costs of their compliance with retail-rate reimbursement laws . . . . ").

Coastal makes a series of arguments in opposition to dismissal, but none are persuasive. First, it seems to argue that because Chapter 93B is designed to protect dealers and prohibits unfair and/or deceptive conduct, and because the Warranty Charge harms Coastal, the Warranty

---

[8] Coastal's theory appears to be that because of the Warranty Charge, Coastal ended up netting less than its customary rate for providing warranty service.  That theory is flawed, however, because *any* increase in the price that NNA charges would, in a sense, result in Coastal receiving less than its customary rate.  If, for instance, instead of assessing the Warranty Charge, NNA had simply charged Coastal $65–$260 more per car, Coastal's economic situation would not change, but its claim for a violation of the statute would be completely undercut.  In other words, according to Coastal, in the absence of express statutory language to the contrary, NNA's liability depends entirely on how it labeled a surcharge.

More generally, Coastal seems to proceed under the assumption that it enters into only one transaction with NNA whereby it both purchases cars and seeks reimbursement for warranties. There are, in fact, two transactions.  In the first, it buys cars from NNA, and in the second, it seeks reimbursement from NNA for warranty service it provides.  As currently drafted, § 9(b) governs only the second transaction.

Charge must be precluded by the statute.  See [ECF No. 13 at 6–7].  There is, however, nothing deceptive or unfair about raising prices to account for increased compliance costs.  See Acadia Motors, 44 F.3d at 1056 (observing that "it is quite commonplace for manufacturers and other regulated entities to pass on to retailers and consumers their costs of complying with regulatory statutes . . . . even when the costs are passed on to the 'beneficiaries' of the regulations").

Second, Coastal points to statutes from other states and argues that because the language in § 9 is comparatively broad (and was amended in 2012 to become even broader), it should be read to proscribe the Warranty Charge.  [ECF No. 13 at 7–13].  Coastal is partially correct.  The Massachusetts Legislature did provide broad protection via § 9(b)(2)(vii), but only against "polic[ies], procedure[s] or program[s] . . . for compensation . . . inconsistent with" § 9(b).  The Warranty Charge is not such a policy, procedure, or program.[9]

Third, Coastal maintains that because the Warranty Charge is designed to shift the cost of complying with the statute from NNA to Coastal (or the consumer), it is incompatible with the purpose of § 9 and therefore violates the statute.  [ECF No. 13 at 13–16].  As discussed above, however, the statute does not address prices.  Further, the case that Coastal relies on, Nissan North America, Inc. v. Motor Vehicle Review Board, 7 N.E.3d 25, 35 (Ill. App. Ct. 2014), is distinguishable in that the statute at issue in that case did speak to cost recovery.  Moreover, the Illinois court specifically noted that "where a statute does not prohibit or limit cost recovery for warranty reimbursement, then a manufacturer has every right to impose a surcharge in order to recoup the costs it must pay its dealers under the mandates of that statute."  Id. at 38.  Here, § 9

---

[9] Further, the fact that the Massachusetts Legislature amended the statute after the Maine statute at issue in Acadia Motors and Gwadosky was amended, and still declined to expressly address cost recovery and/or surcharges, suggests that it did not intend to proscribe such methods.

does not prohibit or limit cost recovery for warranty reimbursement.  Accordingly, NNA has

"every right to impose a surcharge."  Id.

Finally, Coastal asserts that there is a disputed factual issue regarding whether the

Warranty Charge is part of the wholesale price it pays to NNA or a separate surcharge.  [ECF

No. 13 at 16–17].  Regardless of how it is characterized, however, the Warranty Charge is not

precluded by § 9(b) because § 9(b) does not address the prices that distributors can charge

dealers for vehicles.

In sum, because Coastal has failed to state a plausible claim under § 9(b)(2)(vii), NNA's

motion to dismiss Count I, [ECF No. 11], is GRANTED.

In Count II, Coastal alleges violations of various sections of Chapter 93B including:

§ 3(a), which prohibits "[u]nfair methods of competition and unfair or deceptive acts or

practices," Mass. Gen. Laws ch. 93B, § 3(a); § 4(a), which prohibits "action which is arbitrary,

in bad faith, or unconscionable," id. § 4(a); and § 4(c)(12), which prohibits distributors and

manufacturers from violating Chapter 93B via affiliates, id. § 4(c)(12).  [ECF No. 1-1 at 22–27].

Coastal identifies a number of allegedly violative acts, including the imposition of the Warranty

Charge.  [Id.].  Given the Court's finding that Coastal has failed to state a viable claim under

§ 9(b)(2)(vii), the Court finds that Coastal has also failed to state a claim under §§ 3(a), 4(a), or

4(c)(12) based on the Warranty Charge.  Simply stated, Coastal has failed to adequately allege

that the Warranty Charge was "unfair," "deceptive," "arbitrary," "in bad faith," or

"unconscionable."[10]  For that reason, to the extent Count II is premised on the Warranty Charge,

that claim is also DISMISSED.

---

[10] Additionally with respect to § 4(c)(12), Coastal has not alleged that NNA acted via any
affiliate, which is fatal to its claim.

## IV.      CONCLUSION

For the reasons stated above, NNA's motion to dismiss, [ECF No. 11], is <u>GRANTED</u>.

Count I is <u>DISMISSED</u>, and Count II, insofar as it is based on the Warranty Charge, is also

<u>DISMISSED</u>.

**SO ORDERED.**

October 5, 2021                                              /s/ Allison D. Burroughs
                                                           ALLISON D. BURROUGHS
                                                           U.S. DISTRICT JUDGE