UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| W.N. MOTORS, INC. d/b/a COASTAL NISSAN, | * * * * | |
| Plaintiff, | * * | |
| v. | * * | Civil Action No. 21-cv-11266-ADB |
| NISSAN NORTH AMERICA, INC., | * * * | |
| Defendant. | * * | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Currently pending before the Court are Defendant Nissan North America, Inc.'s ("NNA") motion for a protective order, [ECF No. 25], and motion to compel, [ECF No. 33], both of which Plaintiff W.N. Motors, Inc. d/b/a Coastal Nissan ("Coastal") has opposed, [ECF Nos. 29, 34]. For the reasons set forth below, NNA's motion for a protective order, [ECF No. 25], and its motion to compel, [ECF No. 33], are GRANTED.

**I.      MOTION FOR A PROTECTIVE ORDER**

Both sides to this dispute agree to a protective order to govern discovery in this matter and have agreed on many of the terms of a proposed protective order. The parties, however, have been unable to resolve a dispute concerning the disclosure of a category of "Highly Confidential" documents containing information about non-party Nissan dealers.

NNA proposes a two-tier protective order. [ECF Nos. 25, 25-1, 25-3 ("NNA's Proposed Order")]. The first tier, designated "Confidential," would include "information protected from disclosure by statute or that should be protected from disclosure as confidential personal

information, medical or psychiatric information, trade secrets, personnel records, or such other sensitive commercial information that is not publicly available[,]" and such information would be restricted to "counsel; parties and employees of a party; court reporters; experts; and other persons based on agreement of counsel or order of the Court." [ECF No. 25-1 at 3; NNA's Proposed Order ¶ 3].

At issue here is the proposed second tier, designated "Highly Confidential - Attorneys' Eyes Only," which would include "information or documents that are extremely sensitive such that disclosure to another party or non-party would create a substantial risk of harm, including third-party dealer information . . . ." [ECF No. 25-1 at 3; NNA's Proposed Order ¶ 3]. Specifically, this relates to Coastal's request for the financial and commercial information of non-party Nissan dealers with whom it competes. These documents would include details of Coastal's competitors' sales performance and the incentive funds paid to each dealer by NNA. [ECF No. 25-1 at 2, 7].

Under NNA's proposed order, this category of "Highly Confidential - Attorneys' Eyes Only" documents will be available to everyone with access to "Confidential" information, including counsel, experts, and court reporters, *except the receiving party and employees of the receiving party*. [ECF No. 25-1 at 3; NNA's Proposed Order ¶ 6]. NNA asserts that this financially and commercially sensitive non-party Nissan dealer information should not be disclosed to Coastal's owners or employees because direct access to this information would provide Coastal with a competitive advantage over its peers and that possession of such information would allow Coastal to form a retail pricing and sales strategy against the non-party competitors that would create a risk of irreparable harm to their businesses. [ECF No. 25 at 4–8].

Coastal opposes the "Attorneys' Eyes Only" designation of this category of documents, [ECF No. 29], and requests that Coastal's owners Richard Walker ("Walker") and Thomas Norton ("Norton"), as well as a party representative from NNA, be added to the list of individuals permitted to view the documents. [Id. at 1; ECF No. 29-5 ("Coastal's Proposed Order")]. Coastal argues that Walker and Norton's ability to review these documents is essential to its ability to meaningfully prosecute its claims. [ECF No. 29 at 2]. Without Walker and Norton, Coastal asserts that it would be unable to interpret NNA's policies and practices that are at the heart of its complaint. [Id.]. Moreover, Coastal suggests that NNA has failed to provide any specific example of sensitive information that would cause harm if shown to Coastal's representatives and further avers that NNA's own policies undermine its argument because it routinely distributed this type of information to competitors. [Id.].

Federal Rule of Civil Procedure 26(c)(1) provides that a court may "for good cause, issue an order to protect a party or a person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c)(1). This includes an order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way[.]" Fed. R. Civ. P. 26(c)(1)(G). Courts have "broad discretion to decide when a protective order is appropriate and what degree of protection is required." ClearOne Commc'ns, Inc. v. Chiang, 276 F.R.D. 402, 404 (D. Mass. 2011) (internal quotation marks and citation omitted). Defendant, as the party seeking protection, bears the burden of proving "good cause" by demonstrating a factual basis concerning the risk of potential harm. Fed. R. Civ. P. 26(c)(1); ClearOne Commc'ns, Inc., 276 F.R.D. at 403.

The Court finds that NNA has shown good cause to support its view that certain sensitive dealer-specific financial information should be granted "Attorneys Eyes Only" protection.

Courts have recognized the propriety of issuing protective orders to limit the disclosure of such sensitive commercial information among competitors, particularly that of non-parties.  See GTE Prods. Corp. v. Gee, 112 F.R.D. 169, 171–72 (D. Mass. 1986) (collecting cases and finding that "attorney's eyes only" protection of competitor's commercial business information "balance[ed] the risk of competitive injury to third parties as against the need for the defendants"); see also Anaqua, Inc. v. Schroeder, No. 12-cv-10710, 2012 WL 12960760, at *3 (D. Mass. Sept. 14, 2012) ("Courts generally have protected the identity of a company's clients and its pricing information."); Westside-Marrero Jeep Eagle, Inc. v. Chrysler Corp., No. 97-cv-3012, 1998 WL 186728, at *2 (E.D. La. Apr. 17, 1998) ("Ample precedent exists for limiting disclosure of highly sensitive, confidential or proprietary information to attorneys and experts, particularly when there is some risk that a party might use the information or disseminate it to others who might employ it to gain a competitive advantage over the producing party.") (collecting cases).

NNA has sufficiently demonstrated that such information could give Coastal's owners a harmful advantage over competition.  In opposition, Coastal has identified no support for its contention that NNA must identify an "example of an actual document" to show a particularized harm from disclosure.  [ECF No. 29 at 13].  Further, none of the cases Coastal cites for support involve the disclosure of third-party competitive data, see [ECF No. 29 at 13–16], and the only case Coastal cites that even mentions competitor data is wholly inapplicable because that court held that defendants—who, unlike here, were refusing to produce responsive material entirely—failed to demonstrate that certain computer technology was confidential where the technology was commercially available, Haseotes v. Abacab Int'l Computs., Inc., 120 F.R.D. 12, 14 (D. Mass. 1988).

4

Nor is the Court persuaded by Coastal's assertion that NNA cannot claim disclosure concerns when it frequently shared this type of information among dealers in the past. NNA has sufficiently distinguished the examples Coastal has provided with the type of information sought, see [ECF No. 32 at 2 (explaining that the emails offered by Coastal "address the number of vehicles dealers sold, the amount of parts dealers purchased from NNA, and dealers' customer satisfaction scores, but nothing in these emails discloses the dollar amount NNA has paid each respective dealer in incentive funds, which is the among the data that NNA seeks to protect."); see also ECF No. 32-1], and the Dealer Agreement between the parties specifically states that NNA will not distribute a dealer's financial statements or other confidential data, excluding sales records or reports, to any third parties, with limited exceptions. [ECF No. 32 at 3].

Finally, Coastal argues that it cannot meaningfully review this information without the insight of its owners, but, at this stage, the Court cannot conclude that Coastal's attorneys and experts, especially those uniquely experienced in motor vehicle sales, see [ECF No. 32 at 2], will be unable to thoughtfully review standard dealer information, see Anaqua, Inc., 2012 WL 12960760, at *3 ("Courts have also rejected arguments . . . about the need to widely share confidential information in order to pursue the case."). "If [plaintiff's claim] were true, then courts would never issue 'attorney's eyes only' protective orders in cases involving [disclosure of confidential commercial information to competitors], as plaintiffs would always 'need' to see this information to prosecute their cases." Nutratech, Inc. v. Syntech (SSPF) Int'l, Inc., 242 F.R.D. 552, 556 (C.D. Cal. 2007). This is especially true where NNA has agreed that Coastal may, after obtaining NNA's consent, anonymize and share these materials with Walker and Norton, to the extent their review is needed. [ECF No. 25-1 at 4, 8; ECF No. 25-2 ¶ 7; ECF No. 32 at 6]. There is no reason to believe that the types of "acronyms" and "jargon" that Coastal

claims it needs Walker and Norton to review would be included in the redacted confidential information. [ECF No. 29 at 12]. To the extent Coastal is concerned NNA will abuse the "Attorneys' Eyes Only" designation by over-inclusion, it may challenge those specific designations pursuant to the protective order. See [NNA's Proposed Protective Order ¶ 12].

In light of the risk of harm to third-party dealers and the lack of any actual prejudice to Coastal, the Court will <u>GRANT</u> NNA's motion for a protective order, [ECF No. 25], and adopt NNA's proposed order including the second tier "Attorney's Eyes Only" designation. This balance serves to protect the interest of non-parties, while also accommodating Coastal's need for discovery.

**II.        MOTION TO COMPEL**

Next, NNA has moved to compel Coastal to disclose its damage computations in accordance with its obligations under Federal Rule of Civil Procedure 26(a)(1)(A)(iii) and to reply to its Interrogatory 11 requesting the same,[1] [ECF No 33]. Coastal opposed the motion on February 22, 2022, [ECF No. 34], and NNA filed its reply on March 1, 2022, [ECF No. 37].

Rule 26(a)(1)(A)(iii) requires parties to provide "a computation of each category of damages" and to "make available for inspection and copying . . . the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered[.]" Fed. R. Civ. P. 26(a)(1)(A)(iii). The rule requires parties to make a reasonable estimate of their damages so the opposing party may "prepare for trial or make an informed decision about settlement."

---

[1] NNA's Interrogatory 11 seeks: "For each claim asserted by you in this matter, (a) describe in detail the categories and amounts of damages claimed by you; (b) state the basis for each such category of damages and describe in detail the means of calculation thereof; and (c) identify all documents reviewed, created, relied on or considered concerning each such category of damages and the calculation thereof." [ECF No. 33-1 at 9–10].

Fed. R. Civ. P. 26(a), Advisory Comm. Notes (1993).  The rule further requires that "[a] party must make its initial disclosures based on the information then reasonably available to it[,]" and that "[a] party is not excused from making its disclosures because it has not fully investigated the case[.]"  Fed. R. Civ. P. 26(a)(1)(E).

Coastal's Rule 26(a)(1)(iii) disclosure stated that it required further documentation from NNA and expert analysis to "identify the full scope of its damages" and provided the following list of alleged damages:

- damages related to NNA's unreasonable administration and manipulation of its stair step incentives and their impact on Coastal's business;

- damages related to open points (including but not limited to NNA's use of only "represented" markets in its sale performance measurements and NNA's wrongful use and attempted implementation of its cluster strategies);

- damages related to Coastal's unreasonable PMA assignment;

- damages as a result of NNA's efforts to implement its improper cluster strategies;

- damages related to NNA's unreasonable and inequitable use of unfair and arbitrary sales performance metrics;

- damages related to benefits sacrificed by or lost to Coastal due to NNA's unfair sales objectives and sales performance metrics;

- damages related to NNA's creation of a climate where Nissan dealers' profits suffered relative to the risks, investments and efforts required to earn them;

- damages related to NNA's manipulation of its programs to the benefit of some dealers and detriment of others; and

- damages related to NNA's bad acts toward Coastal specifically

[ECF No. 33-2 at 6–7; ECF No. 33-1 at 2, 10 (Coastal's same response to Interrogatory 11); ECF No. 34 at 4–5].  NNA argues that Coastal's nine broad categories of purported harms are insufficient for the purposes of Rule 26(a)(1).  [ECF No. 33-1].  Coastal, in response, maintains that it cannot provide a more detailed computation without further discovery from NNA and then

7

expert analysis to identify the full scope of its damages.[2]  [ECF No. 34].  NNA challenges that contention, arguing that Coastal is obligated to disclose a more detailed theory of damages or a proposed methodology to calculate damages with relevant information already available to it. [ECF No. 33-1 at 4–9].

Though Rule 26 "does not set a particularly high bar for compliance," Lennar Ne. Properties, Inc. v. Barton Partners Architects Planners Inc., No. 16-cv-12330, 2021 WL 927520, at *3 (D. Mass. Mar. 11, 2021), courts generally hold that "[t]he language of the Rule calls for more than a listing of the category of damages – it requires the Plaintiff to place a numerical value on each category of damages."  Ayanna v. Dechert, LLP, 2011 U.S. Dist. LEXIS 121470, at *2 (D. Mass. Oct. 20, 2011); see, e.g., Susilo v. Wells Fargo Bank, N.A., No. 11-cv-1814, 2012 WL 12894745, at *1 (C.D. Cal. Nov. 26, 2012) ("[P]laintiff's initial Rule 26 disclosure did not contain any computation of damages or even any damages figure, and hence it plainly did not comply with Rule 26(a)."); Excel Fortress Ltd. v. Wilhelm, No. 17-cv-04297, 2019 WL 2503684, at *3 (D. Ariz. June 17, 2019) (plaintiff's initial damages disclosure was insufficient where it "simply identified, in broad strokes, some of the categories of damages they intended to pursue at trial without attempting to compute those damages or assign even a rough dollar-figure estimate to them."); Williams v. Boulevard Lines, Inc., No. 10-cv-2924, 2013 WL 5652589, at *4 (S.D.N.Y. Sept. 30, 2013) (disclosures insufficient where plaintiff provided no dollar figures or computation of any kind to quantify the damages he was seeking); see also Pressman v. Publix Super Markets, Inc., No. 06-cv-61350, 2007 WL 9700541, at *1 (S.D. Fla. May 3, 2007); City & Cnty. of San Francisco v. Tutor-Saliba Corp., 218 F.R.D. 219, 221 (N.D.

---

[2] To the extent Coastal suggests in its opposition brief that NNA is improperly withholding discovery, it has not separately brought that issue before the Court nor has it, according to NNA, discussed it with opposing counsel.  [ECF No. 37 at n.1].

Cal. 2003); Max Impact, LLC v. Sherwood Grp., Inc., No. 09-cv-902, 2014 WL 902649, at *6 (S.D.N.Y. Mar. 7, 2014); Lath v. Manchester Police Dep't, No. 16-cv-534, 2018 WL 10560555, at *2 (D.N.H. Mar. 16, 2018).

Coastal's initial damages disclosure clearly does not meet this relatively low bar. And, indeed, Coastal does not argue that it does, but rather argues that it is excused from providing a more detailed theory, or numerical sum, of damages because it cannot do so without expert analysis. [ECF No. 34]. Courts generally have rejected this argument. "While the precise method of calculation need not be disclosed if it is properly the subject of future expert testimony, this does not relieve the plaintiff from providing reasonably available information concerning its damages computation." Allstate Ins. Co. v. Nassiri, No. 08–cv–369, 2010 WL 5248111, at *4 (D. Nev. Dec. 16, 2010); see also Shelton v. Sha Ent, LLC, No. 20-cv-644, 2021 WL 1407968, at *2 (W.D. Okla. Apr. 14, 2021); New Jersey Physicians United Reciprocal Exch. v. Med. Protective Co., Inc., No. 13-cv-2286, 2017 WL 3623801, at *7 (D.N.J. Aug. 23, 2017); Companion Prop. & Cas. Ins. Co. v. U.S. Bank Nat'l Ass'n, No. 15-cv-01300, 2016 WL 3452734, at *2 (D.S.C. June 24, 2016); US Bank Nat. Ass'n v. PHL Variable Ins. Co., No. 12-cv-6811, 2013 WL 5495542, at *3 (S.D.N.Y. Oct. 3, 2013); Frontline Med. Assocs., Inc. v. Coventry Health Care, 263 F.R.D. 567, 569–70 (C.D. Cal. 2009).

While the Court appreciates that Coastal "may not be able to precisely compute [its] claimed damages [this] does not excuse them from their obligation to compute their losses as precisely as possible and to supplement that computation in the event that they obtain new information relevant to the calculation of their alleged losses." Clark v. Berkshire Med. Ctr., Inc., No. 17-cv-30186, 2019 WL 78994, at *3 (D. Mass. Jan. 2, 2019). In other words, Rule 26 does not necessarily require a damages calculation that is precise or final. Here, NNA fairly asks

for either "(1) any clarification of Coastal's broad damages' categories or (2) any formula or methodology [Coastal's expert] intends to apply in calculating Coastal's damages." [ECF No. 37 at 3]. Coastal should be able to provide at least as much to fairly put NNA on notice of the damages alleged against it, and to ensure the effective administration of discovery. Corning Optical Commc'ns Wireless Ltd. v. Solid, Inc., 306 F.R.D. 276, 277, 279 (N.D. Cal. 2015). Even in circumstances where it may be reasonable to defer placing a numerical value on a category of damages pending further discovery, a plaintiff must still "sketch the parameters of the damages and supplement when he receives the further information." Ayanna, 2011 U.S. Dist. LEXIS 121470, at *2.

Coastal suggests that NNA's motion is an attempt to "lock" it into an underdeveloped theory of damages, but this runs counter to Rule 26's requirement that parties must supplement responses as discovery unfolds if the evidence calls for it and will not be countenanced by the Court. See Fed. R. Civ. P. 26(e)(1) (imposing a continuing duty to "supplement or correct [the] disclosure or [discovery] response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing").

Coastal also attempts to evade its disclosure obligations by relying heavily on a section of the Advisory Committee Notes to the 1993 amendment of Rule 26 that carves out an exception for patent infringement cases, or similar cases where the damages calculation depends on the defendant's profits, but fails to sufficiently analogize the facts of this case to the cases it cites, which involve patent infringement, disgorgement of gross profits, and unpaid royalties. See [ECF 34 at 14]. Finally, although Coastal (erroneously) proposes that NNA be responsible for

10

providing the Court with a methodology for its damages computation, [ECF No. 34 at 2], it is exclusively the plaintiff's burden to quantify its alleged damages. <u>Viscito v. Nat'l Plan. Corp.</u>, No. 18-cv-30132, 2019 WL 5318228, at *7 (D. Mass. Oct. 21, 2019); <u>Shelton</u>, 2021 WL 1407968, at *1.

Accordingly, NNA's motion to compel, [ECF No. 33], is <u>GRANTED</u>. Upon granting a motion to compel, or if the disclosure is made after the motion was filed, a court must award reasonable expenses after giving the non-movant an opportunity to be heard, <u>see</u> Fed. R. Civ. P. 37(a)(5)(A), but NNA is neither requesting expenses at this time nor does the Court believe that Coastal's position on this matter is entirely unreasonable. Thus, pursuant to Federal Rule of Civil Procedure 37(a)(5)(A)(ii) and (iii), the Court will not presently award expenses.

### III.   CONCLUSION

For the reasons stated above, NNA's motion for a protective order, [ECF No. 25], is <u>GRANTED</u>, and its motion to compel, [ECF No. 33], is also <u>GRANTED</u>. Coastal is hereby <u>ORDERED</u> to promptly supplement its Rule 26 disclosure and response to NNA's Interrogatory 11.

**SO ORDERED.**

May 18, 2022                                             /s/ Allison D. Burroughs
                                                         ALLISON D. BURROUGHS
                                                         U.S. DISTRICT JUDGE